**REVISED VP DRAFT 9/9/13**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CYBER DEVELOPMENT GROUP | ) | |
| INTERNATIONAL, LLC | ) | Case No. 13-B-34214 |
| | ) | |
| | ) | The Honorable Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | Hearing:  Tuesday, September 10, |
| | ) | 2013, 11:30 AM |

### STIPULATION AND INTERIM ORDER
### (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO
### 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO
### 11 U.S.C. §§ 361 AND 363 AND (III) SCHEDULING A FINAL HEARING AND
### PURSUANT TO BANKRUPTCY RULE 4001(c)

Upon the emergency motion (the "Motion") dated August 29, 2013, of Cyber

Development Group International, LLC ("CDGI" or "Debtor"), (a) seeking this Court's

authorization pursuant to Section 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et

seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal

Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for the Debtor, inter alia,

to (a) seek this Court's authorization, pursuant to Bankruptcy Code § 363(c), to use Cash

Collateral (as defined below) and, pursuant to Bankruptcy Code §§ 361 and 363(e), to provide

adequate protection to Libertyville Bank and Trust Co. (the "Lender") with respect to the use and

any diminution in the value of the Lender's interest in the Pre-Petition Collateral (as defined

below) the use of Cash Collateral and the use, sale or lease of the Pre-Petition Collateral (as

defined below) and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a);

(b) seek a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an

interim order pursuant to Bankruptcy Rule 4001; and (c) request that a final hearing (the "Final

Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order authorizing on a final basis, <u>inter alia</u>, the use of Cash Collateral (this "<u>Order</u>"); the Preliminary Hearing having been held before this Court; due and sufficient notice of the Motion and the Preliminary Hearing under the circumstances having been given; and upon the entire record made at the Preliminary Hearing, and this Court having found good and sufficient cause appearing therefor,

THE DEBTOR AND THE LENDER STIPULATE AND THE COURT FINDS AND CONCLUDES THAT:

A.      On August 27, 2013 (the "<u>Petition Date</u>"), CDGI filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (this "<u>Chapter 11 Case</u>").  On August 30, CRC1331 BCD Mt. Prospect, LLC ("CRC1331") also filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code.  CDGI and CRC1331 are continuing in possession of its property, and operating and managing its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.      This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtor acknowledges and stipulates that from time to time prior to the Petition Date, the Lender loaned money to or for the benefit of the Debtor, pursuant to the terms and conditions of (i) that certain Loan and Security Agreement dated as of May 21, 2009 (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "<u>Loan and Security Agreement</u>"), (ii) that certain

2

Promissory Note dated July 19, 2011 in the original principal amount of $900,000 payable by CDGI and affiliate CRC 1331 BCD Mt. Prospect, LLC ("CRC1331") which owns the real estate on which CDGI operates to the Lender (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "July 2011 Note"), (iii) that certain Promissory Note dated November 6, 2007 in the original principal amount of $3,100,000 payable by CRC1331 to the Lender (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "November 2007 Note,"), (iv) that certain Promissory Note dated October 19, 2012 in the original principal amount of $285,000 payable by CDGI and CRC1331 to the Lender (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "October 2012 Note"), (v) that certain Mortgage dated October 24, 2007 by CRC1331 in favor of the Lender (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "October 2007 Mortgage"), and (vi) that certain Mortgage dated November 6, 2007 by CRC1331 in favor of the Lender (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "November 2007 Mortgage," and collectively with the Loan and Security Agreement, the July 2011 Note, the November 2007 Note, the October 2012 Note, and the October 2007 Mortgage, the "Loan Agreements"), and as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents entered into in connection with the Loan Agreements, including, without limitation, (x) that certain Forbearance Agreement dated September 13, 2010 by and among the Lender, CDGI, CRC1331, AOP Investments, LLC ("AOP"), John H. Pressman ("Pressman") and Anna Pressman ("A. Pressman"), (y) that certain Reaffirmation and Amendment to Forbearance Agreement and First Amendment to Loan and Security Agreement dated July 19, 2011 by and among the Lender,

CDGI, CRC1331, AOP, Pressman and A. Pressman, and (z) that certain Reaffirmation and Second Amendment to Forbearance Agreement and Second Amendment to Loan and Security Agreement dated October 19, 2012 by and among the Lender, CDGI, CRC1331, AOP, Pressman and A. Pressman, all as may have been amended, modified or restated from time to time.  All documents identified in this paragraph C (including the Loan Agreements) and all documents executed and delivered in connection therewith, as same may have been amended, supplemented or restated from time to time, shall collectively be referred to as the "Pre-Petition Agreements."[1]

D.     Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtor acknowledges and stipulates that, in accordance with the terms of the Pre-Petition Agreements, the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that as of August 27, 2013, (i) the Debtor was liable to the Lender in respect of loans made pursuant to the Pre-Petition Agreements in the aggregate principal amount of approximately $3,615,500.00[2] (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities, collectively, inclusive of interest, fees, expenses and all Obligations, the "Pre-Petition Loan Indebtedness").

E.     Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtor acknowledges and stipulates that under the Pre-Petition Agreements and as security for repayment of the Pre-Petition Indebtedness, CDGI and CRC1331 granted to the Lender security interests in, and liens upon, substantially all of their

---

[1] Capitalized terms not otherwise defined herein shall have the definitions set forth in the Pre-Petition Agreements.

[2] The aggregate principal amount is broken down as follows: (a) the principal balance on the November 2007 Note is approximately $2,627,694.59, (b) the principal balance on the July 2011 Note is approximately $702,803.36, and (c) the principal balance on the October 2012 Note is approximately $285,000.

assets (including, without limitation, all deposits, accounts, stock, accounts receivable, chattel paper, contract rights, general intangibles, inventory, goods, trade and other fixtures, leasehold improvements, equipment, all other tangible and intangible personal property and proceeds therein, and that certain real property at the address commonly known as 1331 E. Business Center Drive, Mt. Prospect, Illinois 60056 (the "Real Property")), as more fully described in the Pre-Petition Agreements, which are incorporated herein by reference (collectively, including Cash Collateral (as defined below), the "Pre-Petition Collateral").

F.    Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtor acknowledges and stipulates that the Lender's security interests in and liens on the Pre-Petition Collateral were properly perfected and are valid and enforceable first priority liens on and security interests in the Pre-Petition Collateral, subject to the Prior Permitted Liens (as defined below).    The Debtor further acknowledges that its cash constitutes proceeds of the Pre-Petition Collateral and, therefore, is cash collateral of the Lender within the meaning of Bankruptcy Code § 363(a) (collectively, "Cash Collateral").  The Lender is entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of its interest in the Pre-Petition Collateral, including for the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral other than Cash Collateral, and for the imposition of the automatic stay.

G.    The Debtor represents that the Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or operate its business and maintain its property in accordance with state and federal law and have commenced the orderly sale process of its business and assets as a going concern to the extent possible.  In the absence of the use of Cash Collateral, the orderly sale of the Debtor's business

CHICAGO/#2485712.8

and assets would not be possible, and would cause serious and irreparable harm to the Debtor and its estate.

H.      Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Lender, and (iii) the creditors holding the 20 largest unsecured claims against the Debtor on a consolidated basis. Under the circumstances, such notice of the Preliminary Hearing and the relief requested in the Motion constitutes adequate and sufficient notice under Bankruptcy Code §§ 102(1), 364(c) and 364(d) and Bankruptcy Rules 2002 and 4001(c), and no other or further notice need be given.

I.      At the Preliminary Hearing, the Court considered representations made by counsel regarding:

(i)      the negotiations pertaining to this Order;

(ii)      the necessity for this Order;

(iii)      the events leading up to the filing of these Chapter 11 Cases by the Debtor;

(iv)      The Debtor's need for credit to the extent necessary to avoid immediate and irreparable harm to its estate, pending a final hearing in accordance with Bankruptcy Rule 4001(c); and

(v)      those expenses necessary to avoid immediate and irreparable harm to their estates.

J.      The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  The permission granted herein to use Cash Collateral, on an emergency interim basis is necessary to avoid immediate and irreparable harm to the Debtor.

6

This Court concludes that entry of this Order is in the best interest of the Debtor's estate and creditors as their implementation will, among other things, provide the Debtor with the necessary funds to conduct and complete the orderly sale of the Debtor's business as a going concern to the extent possible and maximize the value of the Debtor's assets for the benefit of their creditors and estates.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AND AGREED AMONG THE PARTIES HERETO THAT:

1.      The Motion is granted on an interim basis, subject to the terms and conditions set forth in this Order.

2.      The Debtor is hereby authorized on an interim basis to use Cash Collateral after the Petition Date pursuant to the terms and conditions of this Order and the Pre-Petition Agreements, as modified hereby.   The Debtor is authorized to use Cash Collateral and other Collateral (as defined below) as provided and limited in the Budget (as defined in Paragraph 9 below) for operations of the Debtor's business and the administration of this Chapter 11 Case (all use of Cash Collateral and other Collateral to the extent of any diminution in the value thereof (to the extent necessary, as proven to the Court) after the Petition Date collectively shall constitute, the "Post-Petition Diminution"), provided, that the use of Cash Collateral is consistent with the terms of the Pre-Petition Agreements, this Order, and the Budget, and will only be used to pay when due the expenses set forth in the Budget.

3.      During the term of this Order, the terms of the Pre-Petition Agreements shall continue in full force and effect.

4.      The Post-Petition Diminution shall constitute claims (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or

CHICAGO/#2485712.8

ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 726, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, but subject to the rights described below in Paragraph 22. Subject to the rights described below in Paragraph 22, no cost or expense of administration under Bankruptcy Code §§ 105, 364(c)(1), 503(b), 507(b) or otherwise, including those resulting from the conversion of this Chapter 11 Case pursuant to Bankruptcy Code § 1112, shall be senior to, or pari passu with, the Superpriority Claims of the Lender arising out of the Post-Petition Diminution.

5.     As security for the Post-Petition Diminution, the Lender shall have and is hereby granted (effective upon the date of this Order and without the necessity of the recordation of mortgages, security agreements, pledge agreements, financing statements or otherwise) valid and perfected senior security interests in, and liens on (collectively, the "Liens") (to the extent, validity and priority same existed on the Petition Date), all assets of the Debtor of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, including without limitation, and any and all proceeds of the foregoing, a 100% pledge of the Debtor's capital stock in which the Debtor has an interest and the stock of all of the Debtor's subsidiaries, causes of action (including without limitation any commercial tort claims), investment property, leases and all substitutions thereto, accessions, rents and proceeds of the foregoing, wherever located, including insurance and other proceeds (collectively, with all proceeds and products of any or all of the foregoing and including the Pre-Petition Collateral, the "Collateral"):

CHICAGO/#2485712.8

a.      A first priority, perfected Lien upon all of the Debtor's right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien senior to the Liens of the Lender on the Petition Date that are not subject to avoidance under Bankruptcy Code §§ 544, 545, 547, 548, 549, 550 or 553 (the "Prior Permitted Liens");[3]

b.      A first priority, senior perfected Lien upon all of the Debtor's right, title and interest in, to and under the Pre-Petition Collateral, provided that such first priority senior Lien shall be subject and junior to the Prior Permitted Liens; and

c.      A second priority, junior perfected Lien upon all of the Debtor's right, title and interest in, to and under all other Collateral that is subject to Prior Permitted Liens to the extent such perfection in respect of a Pre-Petition Date claim is expressly permitted under the Bankruptcy Code.

Except to the extent expressly set forth in clauses (a), (b) and (c) of this paragraph and Paragraph 6 hereof, the Liens granted pursuant to this Order and the Pre-Petition Agreements to the Lender to secure the Post-Petition Diminution shall not be subordinated to or made pari passu with any other lien or security interest.   The provisions of any intercreditor agreements or subordination agreements that subordinate liens and security interests to the liens and security interests of the Lender or other indentures that subordinate any claims to the claims of the Lender shall remain in full force and effect and shall continue with respect to the liens and security interests granted to the Lender in the Collateral.   In addition, both (i) that certain Amended and

---

[3] Notwithstanding anything to the contrary contained herein, (a) Pinnacle Service, Inc.'s interests in any Collateral, and (b) the interests of Therm Flo, Inc., Zonatherm, Inc., ThermFlo Profit Sharing Trust, and the Albert & Patricia Izzo Trust in any equipment or other Collateral, are preserved to the same extent, validity and priority that existed as of the Petition Date; provided, however, that the Debtor, the Lender and all other parties in interest reserve their rights to challenge and defend against such interests.

Restated Subordination Agreement executed by ThermFlo Profit Sharing Trust, accepted and agreed to by the Lender, the Debtor and others and dated October 19, 2012 and (ii) that certain Amended and Restated Subordination Agreement executed by the Albert & Patricia Izzo Trust, accepted and agreed to by the Lender, the Debtor and others and dated October 19, 2012, shall remain in full force and effect.

6.      Immediately upon entry of this Order, the Debtor is hereby authorized to use Cash Collateral, <u>provided</u> that the Lender is granted adequate protection for any diminution in the value of the Collateral resulting from (i) the Debtor's use of Cash Collateral pursuant to Bankruptcy Code § 363(c), (ii) the use, sale or lease of the Collateral (other than Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (iii) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a):

(i)      the Lender shall be and hereby is granted (effective upon the date of this Order and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected, replacement security interests in, and liens on (the "<u>Replacement Liens</u>"), all of the Debtor's right, title and interest in, to and under the Collateral, subject only to any Prior Permitted Liens (after giving effect to this Order) prior in interest and senior to the Liens granted to the Lender pursuant to this Order and the Pre-Petition Agreements.

Further, as specific additional adequate protection for the Debtor's use of the Real Property, the Collateral and Cash Collateral, the Debtor shall continue to pay monthly payments in the amount of $42,341 per month starting for the month of September, 2013 payable upon the entry of this Order and thereafter on the 6th of each month going forward; <u>provided</u>, <u>however</u>, that such payments are provisional and subject to a determination at a hearing by the Court, if necessary, that the Lender is undersecured.

7.      Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Lender; <u>provided</u>, <u>however</u>, that nothing herein

contained shall affect or impair the Lender's right to seek additional adequate protection of its interests.  Notwithstanding any other provision hereof, the grant of adequate protection to the Lender pursuant hereto is without prejudice to the holders of any Prior Permitted Liens to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest any such modification.

8.      Except as set forth in Paragraphs 5 and 6 hereof, the Liens and Replacement Liens shall be prior and senior to all liens and encumbrances (other than Prior Permitted Liens) of all other secured creditors in and to such Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor).  The Liens and Replacement Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and the Lender shall not be required to file or serve financing statements, notices of lien or similar instruments in respect of the Pre-Petition Loan Indebtedness which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Liens or Replacement Liens shall in no way affect the validity, perfection or priority of such Liens or Replacement Liens.  If, however, the Lender at its sole discretion shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens or Replacement Liens, the Debtor is directed to cooperate with and assist in such process, the stay imposed by Bankruptcy Code § 362(a) is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements,

CHICAGO/#2485712.8

notices of lien or similar instruments, and all such documents shall be deemed to have been filed

or recorded at the time of and on the date of this Order.

9.       Attached hereto as Exhibit A is a thirteen (13) week Budget (the "Budget") for the

period from August 28, 2013 through and including the week ending December 6, 2013, which

has been consented to by the Lender through this Interim Order.  The Budget reflects, on a line-

item basis, anticipated cash receipts and expenditures on a weekly basis and includes all

necessary and required expenses that the Debtor expects to incur during each month of the

Budget.  The Debtor shall be authorized to use the proceeds of the Post-Petition Diminution and

the Collateral only for payment of such items as is set forth in the Budget and subject to the

terms and conditions set forth in the Pre-Petition Agreements and this Order.  The Budget shall

be revised by the end of each month during the period of this Order, and which shall remain

subject to the consent of the Lender each month.  Not later than the second (2nd) business day of

each week commencing with the second week of the period covered by the Budget, the Debtor

shall provide to the Lender with a variance report reflecting, on a line-item basis, the actual cash

disbursements and revenues for the preceding week and the percentage variance (the "Variance

Percent") of such actual disbursements and revenues from those reflected in the Budget for that

period.  Revenues less than ninety percent (90%) of the budgeted amount for (a) the first two-

week period of the Budget and (b) the first three-week period of the Budget ("Allowed Revenue

Variance") shall constitute an Event of Default in accordance with the provisions of this Order.

Any disbursement by the Debtor other than for budgeted amounts as set forth in the Budget shall

constitute an Event of Default in accordance with the provisions of this Order unless the Lender

consents to those changes in writing; provided, however, that the Debtor may make payments in

excess of the total budgeted disbursements so long as (i) the Variance Percent of the aggregate of

12

all actual disbursements for each week shall not exceed ten percent (10.0%) of the budgeted disbursements for that week; and (ii) the Variance Percent of the aggregate of all actual disbursements for (a) the first two-week period of the Budget and (b) the first three-week period of the Budget (subsections (i) and (ii) above are collectively, the "Allowed Disbursement Variance").  For the avoidance of doubt, any amount included in the Budget that is not incurred or paid during a particular week shall be permitted to be carried over into subsequent weeks.

10.     Through a debtor-in-possession account maintained at the Lender's facility, the Debtor shall continue its cash management system with the Lender, which at the discretion of the Lender shall include a lockbox/blocked account to which the Lender will have full dominion and control over Cash Collateral and the cash proceeds of the Collateral pursuant to a lockbox/blocked account agreement and a cash management order requested to be entered at any time, each in form and substance reasonably acceptable to the Lender.

11.     Immediately upon the entry of this Order, the Debtor shall account to the Lender for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of the Pre-Petition Collateral in the Debtor's possession, custody or control.  All cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of the Debtor (collectively, "Cash Proceeds") currently in the possession of the Debtor or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of the Collateral unless such proceeds are specifically identified as not being proceeds of Collateral. All Cash Proceeds shall be remitted to the Lender in accordance with the terms of this Order.

12.     The agreement by the Lender to allow the use of Cash Collateral and the Collateral shall continue until and shall include September ____, 2013 or such earlier date as all

Pre-Petition Loan Indebtedness and Post-Petition Diminution is paid in full (the "Term"), unless terminated prior to this date upon the occurrence of the Termination Date or otherwise pursuant to the terms of the Pre-Petition Agreements or this Order.

13.    If a Default or an Event of Default (as defined in the Pre-Petition Agreements or in this Order) occurs, the Lender shall have the right to terminate its consent to the use of Collateral and Cash Collateral and upon the Lender's providing two (2) business days written notice to the Debtor, the office of the United States Trustee, and any statutory committees appointed in this Chapter 11 Case ("Default Notice"), the Lender may terminate the use of Collateral and Cash Collateral, the "Termination Date") and declare the Loans to be immediately due and payable; provided, however, that the obligations and rights of the Lender and the Debtor with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination the Lender shall be deemed to have retained all of its rights and remedies, including, without limitation, as provided in the Pre-Petition Agreements and under the Bankruptcy Code.   The Debtor's right to use Cash Collateral shall terminate automatically on the Termination Date; provided however that subsequent to the issuance of the Default Notice the Debtor or the Creditors' Committee may seek entry of an Order after notice and hearing allowing use of Cash Collateral and prohibiting the Lender from taking the actions contemplated in this paragraph.

14.    An Event of Default under this Order shall include: (i) the entry of an order dismissing this Chapter 11 Case or converting this Chapter 11 Case to Chapter 7 case, (ii) the entry of an order appointing a Chapter 11 trustee in this Chapter 11 Case, (iii) the entry of an order granting any other claim superpriority status or a lien (other than a Prior Permitted Lien)

equal or superior to the liens granted to the Lender (except pursuant to an order under
Bankruptcy Code § 506(c)), (iv) the entry of an order staying, reversing, vacating or otherwise
modifying the use of Cash Collateral under this Order (except as modified in a final order
acceptable to Lender) without the Lender's prior written consent, (v) the entry of an order in this
Chapter 11 Case appointing an examiner having enlarged powers beyond those set forth under
Bankruptcy Code § 1106(a)(3) and (4), (vi) an Event of Default or Default under the Pre-Petition
Agreements other than an existing default or one related to any financial covenants or to the
filing of this Chapter 11 Case or the consequences thereof, (vii) any material representation or
material warranty by the Debtor to the Lender that is incorrect or misleading in any material
respect when made, (viii) there shall occur a material adverse disruption or change in the orderly
sale of the Debtor's business and assets as a going concern or a change of control shall occur
other than pursuant to a plan of reorganization or sale, (ix) the entry of any order granting any
relief from the automatic stay so as to allow a third party to proceed against any material asset or
assets of the Debtor, (x) the entry of the Final Order shall not have occurred within thirty (30)
days after the Petition Date, (xi) the commencement by the Debtor of other actions adverse to the
Lender or its rights and remedies under this Order, the Final Order approving the Motion, or any
other Bankruptcy Court order, (xii) the failure to pay in full the Post-Petition Diminution by the
last day of the Term, (xii) the Allowed Revenue Variance or the Allowed Disbursement Variance
as set forth in Paragraph 9 herein, is exceeded or (xiv) the failure to meet any of the 363 Sale
Benchmarks (as defined below).

15.     Upon the occurrence of a Default or an Event of Default, the Lender may exercise
its rights and remedies and take all or any of the following actions: (a) enjoin and prohibit the
Debtor from using Cash Collateral to the extent that such Default or Event of Default would

CHICAGO/#2485712.8

permit such relief under the Pre-Petition Agreements, as amended hereby; (b) suspend amounts in any accounts maintained with the Lender, or otherwise enforce rights against all or part of any Collateral in the possession of the Lender to the extent that such Default or Event of Default would permit such relief under the Pre-Petition Agreements, as amended hereby; and/or (c) subject to the provisions of Paragraph 13 above, take any other action or exercise any other right or remedy of the Lender under the Pre-Petition Agreements, this Order or by operation of law.  Upon the Debtor's receipt of a Default Notice, it shall immediately cease making any disbursements except those already accrued in accordance with the Budget, subject to further order of the Court after notice and a hearing.  To the extent of any inconsistencies between the provisions of this Paragraph 15 and Paragraph 13, the provisions of Paragraph 13 shall control.

16.    The Debtor is hereby required to deliver to the Lender such other reasonable financial and other information concerning the business and affairs of the Debtor as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Pre-Petition Agreements, provided however that the Debtor reserves its right to claim that any such documents are protected under attorney-client privilege to the extent permitted under applicable law.  The Debtor shall cooperate with and permit the Lender to perform physical inventories of all assets in the Debtor's facilities at any reasonable times requested by the Lender.  The Debtor shall further provide the Lender with detailed information as to the extent and composition of the Collateral and any collections thereon.

17.    The Lender's obligations hereunder and under the Pre-Petition Agreements shall be subject to the following benchmarks for certain events in this Chapter 11 Case and the Chapter 11 case of CRC1331 (each and collectively, the "363 Sale Benchmarks"):

(i)      a Bid Procedures Order (in form and substance satisfactory to the Lender, and subject to the rights of an unsecured creditors' committee, if any, relating thereto) for the public sale of all of the assets of CDGI and CRC1331 shall be entered by the Court on or before Friday, September 20, 2013;

(ii)     an auction under the Bid Procedures Order for the public sale of all of the assets of CDGI and CRC1331 shall have been held by the Debtor on or before Monday, November 11, 2013;

(iii)    the Debtor shall select a Prevailing Bidder (acceptable to the Lender) on or before Friday, November 15, 2013; and

(iv)     a Sale Hearing shall have been held and a Sale Order approving the sale under Section 363 of the Bankruptcy Code (in form and substance acceptable to the Lender) shall have been entered on or before Tuesday, November 19, 2013.

18.      Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral incurred by the Debtor pursuant hereto or the Pre-Petition Agreements prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits of this Order, including without limitation, the Liens, Replacement Liens and Superpriority Claims granted herein.

19.      The transactions contemplated hereby are not intended to provide the Lender with sufficient control over the Debtor so as to subject the Lender to any liability (including, without limitation, environmental liability as an "owner," "operator," or "responsible person" as those terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorizations Act of 1986) in connection with the management of the Debtor's business or any of the Debtor's properties.  By taking any actions pursuant to this Order, the Lender shall not: (1) be deemed to be in control of

17

the operations or sale of the Debtor; or (2) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation, management or sale of the Debtor.

20.    The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization in this Chapter 11 Case; (b) converting this Chapter 11 Case to a Chapter 7 case; or (c) dismissing this Chapter 11 Case, and the terms and provisions of this Order as well as the Superpriority Claims, Liens and Replacement Liens granted pursuant to this Order and the Pre-Petition Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims, Liens and Replacement Liens shall maintain their priority as provided by this Order until all Pre-Petition Loan Indebtedness and all Post-Petition Diminution is indefeasibly paid in full and discharged.

21.    Except as provided in a Final Order, in consideration for the accommodations set forth herein, the Debtor on behalf of itself and its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of an official committee appointed in this Chapter 11 Case to assert claims on behalf of the Debtor's estate (subject to Paragraph 22 below), shall forever release, discharge and acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "Lender liability" claims or defenses, which arose on or prior to the date this Order is entered with respect to the Debtor, the Pre-Petition Loan Indebtedness, the Collateral, the Pre-Petition Agreements or the Post-Petition Diminution.

18

22.     Except as provided in a Final Order, the findings contained in the recital paragraphs of this Order and the releases granted in Paragraph 21 of this Order shall be binding upon all parties in interest, including without limitation, the Debtor and any statutory committees appointed in this Chapter 11 Case, unless (a) a party in interest (including any statutory committee appointed in this Chapter 11 Case) has properly filed an adversary proceeding or commenced a contested matter challenging the amount, validity, enforceability, perfection or priority of the Pre-Petition Loan Indebtedness or the Lender's liens on the Pre-Petition Collateral in respect thereof, no later than a date that is forty-five (45) days after formation of the official committee of unsecured creditors; or (b) otherwise asserted any claims or causes of action against the Lender relating to the Pre-Petition Loan Indebtedness on behalf of the Debtor's estate, no later than the date that is ninety (90) days after the formation of an official committee of unsecured creditors, and the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is properly commenced as of such respective date, the Pre-Petition Loan Indebtedness shall constitute an allowed fully secured claim, not subject to subordination and otherwise unavoidable respectively.  Subject only to the rights of parties in interest set forth in this paragraph, and subject to any other provisions of this Order, for all purposes in this Chapter 11 Case and any subsequent Chapter 7 case, the Lender's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Lender, the Pre-Petition Loan Indebtedness and the Lender's liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without, limitation, any successor thereto.  If any such adversary

19

proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter, and all claims other than those claims raised in such challenge shall be subject to the release contained in Paragraph 21 of this Order.  If such adversary proceeding or contested matter is dismissed or adjudicated in favor of Lender, the findings and releases contained herein shall be effective.

23.     The provisions of this Order shall be binding upon and inure to the benefit of the Lender and its successors and assigns, and the Debtor, and its successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 Case as a legal representative of the Debtor or the Debtor's estate.

24.     Except as provided in a Final Order, the Lender shall have the right to "credit bid" the secured amount of the Pre-Petition Loan Indebtedness (to be determined by the Court, if necessary) as of the date of such bid during any sale of all or substantially all of the Debtor's assets to the extent it includes the sale of Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

25.     The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Pre-Petition Agreements, as the Lender may reasonably require, as evidence of and for the protection of the use of Cash Collateral, or which otherwise may be deemed reasonably necessary by the Lender and/or the Lender to effectuate the terms and conditions of this Order and the Pre-Petition Agreements.

CHICAGO/#2485712.8

26.     To the extent there exists any conflict between the Pre-Petition Agreements and the terms of this Order, this Order shall govern.

27.     The Final Hearing will be held on _____ __, 2013 at __:__ _.m.  The Debtor shall, on or before _____ __, 2013, mail copies of a notice of the entry of this Order and the date of the Final Hearing, together with a copy of this Order to the parties having been given notice of the Preliminary Hearing, to any party which has filed prior to such date a request for notices with this Court and to any counsel for any statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code § 1102.  The notice of entry of this Order shall state that any party in interest objecting to the Post-Petition Financing shall file written objections with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, by no later than 4:00 p.m. on _____ __, 2013.  Objections shall be served so that the same are received on or before such date and time by: (a) counsel for the Debtor (as set forth in the signature pages below); (b) counsel for the Lender (as set forth in the signature pages below), and (c) the Office of the United States Trustee.

CHICAGO/#2485712.8

Dated:   September __, 2013
         Chicago, Illinois

_____
THE HONORABLE JACK B. SCHMETTERER
UNITED STATES BANKRUPTCY JUDGE


Dated:  September ___, 2013

STIPULATED AND AGREED:

**WEISSBERG AND ASSOCIATES, LTD.**


By:_____

     Ariel Weissberg, Esq. (IL Bar No. 3125591)
     401 South LaSalle Street, Suite 403
     Chicago, Illinois 60605
     Telephone: (312) 663-0004
     Facsimile: (312) 663-1514

     Proposed Counsel to the Debtor


**VEDDER PRICE P.C.**


By:_____

     Douglas J. Lipke, Esq. (IL Bar No. 0312457)
     Jonathan E. Aberman, Esq. (IL Bar No. 6255541)
     Stephanie K. Hor-Chen, Esq. (IL Bar No. 06283105)
     222 North LaSalle Street, Suite 2600
     Chicago, Illinois 60601
     Telephone: (312) 609-7500
     Facsimile: (312) 609-5005

     Counsel to Libertyville Bank and Trust Company

CHICAGO/#2485712.8